FRANCIS G. BUTLER AND OTHERS *vs.* THOMAS SISSON, ADMINISTRATOR, AND OTHERS.

An administrator refused, upon the application of parties interested in the estate, to bring suit for certain stocks to which they claimed that the estate was entitled. Held that a court of equity would not entertain a bill brought by them in their own names to compel the transfer of the stocks to the administrator.

The whole power and duty of taking possession of the assets of an estate and of recovering them by suit if necessary, is committed by the law to the executor or administrator, and where he neglects his duty the law furnishes ample remedy to parties interested in a suit on his bond, or in proceedings in the probate court for his removal, or for the disallowance of his probate account.

In the present case the administrator was a corporation empowered to take administration of estates and excused from giving bond; while the parties who would have the right to sue for a devastavit had conflicting interests and a part would not join with the present petitioners in such

a suit. Held not to be a sufficient reason for allowing the petitioners to go into a court of equity.

Whether it would be necessary that all the parties interested should be joined as plaintiffs in an action at law against the administrator for damages: *Quære.*

The doors of a court of equity are not absolutely closed against the entrance of parties interested in an estate in settlement, but there must be some emergency, like a threatened misappropriation of assets by an insolvent administrator with an insufficient bond, to warrant the interference of the court to protect the estate.

BILL IN EQUITY to compel the transfer of certain stocks and the payment of money; brought to the Superior Court in Hartford County.

The petition alleged that Jonathan Butler, of West Hartford in this state, died in 1855 leaving a considerable estate, and a will by which, after giving certain legacies, he disposed of the residue of his estate as follows:—" To my two children, George and Eliza Butler, two undivided third parts, in equal portions, to them and their heirs forever; and to my son, Nathan Butler, the use, occupation and income, during his life, of the remaining third part. If, however, by reason of sickness, infirmity or age, such income or use should not be adequate to his comfortable support, I direct that the share given him, viz., said third part, including the fee simple of the same, or any part of the same, be sold, and the avails applied for his support and benefit. In case the whole estate given to my son Nathan Butler should not be expended for his benefit, including the fee-simple or remainder that may be sold, then what remains of said property shall go to my other children and their heirs forever." That the petitioners were the children and heirs of the children of said Jonathan Butler to whom the property given to the said Nathan for life was to go after his death. That Jonathan Butler at the time of his death owned, besides other estate, forty-one shares of the stock of the Ætna Insurance Company, of Hartford, which company was incorporated in 1819 with a capital stock of $150,000 of the par value of $100 per share, and with power to increase its capital to the sum of $500,000, which

increase had been made at the time of the death of said
Jonathan in 1855. That the legislature in 1857 authorized
a further increase to $1,500,000; and in 1864 to $3,000,000;
which increases were made and the new stock distributed
by vote of the directors *pro rata* among the old stock-
holders. That in 1871, after heavy losses, the capital stock
was reduced to $1,500,000, and immediately after increased
to $3,000,000 by actual subscription and payment, the right
to subscribe being given *pro rata* to the old stockholders
and being of the value of $75 for each share above the sum
required to be paid in for it. That in 1872 the company
reduced its capital to $2,000,000 and again increased it by
the creation and sale of new stock to $3,000,000, the right
to subscribe for the new stock being given as before to the
old stockholders and being of the value of $75 for each
share. That there was set to Nathan Butler from Jona-
than's estate fourteen shares of the stock of said Ætna
Insurance Company, and that all the new stock that was
distributed was issued to him and in his own name, and the
right to subscribe for the shares of new stock upon the last
two increases of stock were sold by him for a large sum of
money, to wit, more than $2,000. That Nathan Butler
died in 1878, childless, leaving a will by which, after making
certain small bequests, he gave the residue of his property
to the children of two nieces, and leaving an estate of con-
siderable amount, a part of which, amounting to about
$24,000, was made up of stock distributed to him by said
Ætna Insurance Company, and of profits received by him
on the sale of the right to subscribe for a portion of said
new stock. That all said stock rightfully belonged to the
estate of said Jonathan Butler, as did also the money
received as premium on the sale of the right to subscribe
for said new stock, and that under the will of said Jonathan
all the income given to said Nathan and remaining un-
expended at his death reverted to said Jonathan's estate,
for the benefit of the petitioners and other heirs of said
Jonathan. That the respondent Sisson was administrator
with the will annexed of said Nathan Butler, and had taken

possession of all said stock and other property as assets of his estate and claimed that the same belonged to the estate and were held by the said Nathan absolutely and not merely for life. That in 1879 the Security Company, a corporation chartered by the legislature of this state, and located at Hartford, and empowered by its charter to act as executor, administrator and trustee, had been duly appointed by the court of probate for the district of Hartford administrator with the will annexed of the estate of said Jonathan and had accepted said trust and was proceeding with the settlement of the estate; and that, by the terms of its charter, it was exempted from the necessity of giving bonds for the faithful discharge of its duties in the trusts which it was authorized to undertake. That the petitioners, who were or represented a part of the legatees under the will of said Jonathan Butler, who were, on the death of said Nathan, to receive the property so held by him for his life, had requested said Security Company to bring suit against the said Sisson as administrator of said Nathan's estate, to recover from him said stocks and other property, but that said company had refused to bring such suit; and that on such refusal the petitioners had offered to pay all the expense of such suit and save the estate from all risk or loss and had asked said company for permission to use its name as administrator in bringing such a suit, but said company had refused to allow its name to be so used. That some of the persons equally entitled with the petitioners to said stock and other property under the will of the said Jonathan Butler, were interested as legatees under the will of said Nathan and were not willing to join the petitioners in the present suit or in any proceeding to enforce their rights under the will of said Jonathan. And that the said Sisson, as administrator, was intending to distribute said stock as a part of the estate of said Nathan, and would do so unless restrained by the court.

The petition then prayed for an injunction restraining the said Sisson from distributing the stock, for a disclosure as to the dividends and income received from it while it had

been in his hands, and as to the personal property of any kind that he had received as a part of the estate of said Nathan, for an account of all moneys received, and for a decree that all said stocks should be transferred by said Sisson as administrator to the Security Company as administrator of the estate of said Jonathan, and that all the property remaining at the time of the death of said Nathan and being property derived from the estate of said Jonathan, either directly or as income from the same, should be delivered by said Sisson to said Security Company as a part of the assets of said Jonathan's estate; with a prayer for general relief.

The respondent Sisson demurred to the petition, and the court (*Hovey, J.,*) held it insufficient and dismissed the bill. The petitioners brought the record before this court by a motion in error.

*J. Hooker* and *F. H. Parker*, with whom was *E. Goodman*, for the plaintiffs in error.

1. In coming into a court of equity we do not encounter any question of jurisdiction. The courts will not allow a case that belongs exclusively to probate jurisdiction to be brought into the Superior Court; but this is not a case over which the probate court has any jurisdiction. We are not asking for a distribution of the property claimed among the heirs or legatees. That would be an act pertaining to the settlement of the estate and wholly a probate matter. We ask only for the delivery of the property as assets of the Jonathan Butler estate, to the Security Company as administrator of that estate. If the Security Company had sued for the property it would have brought an action at law in the Superior Court. We go into the same court, with the same question, and for the same purpose. The only question is, not whether we can go into that court, but whether we can go in as petitioners in equity.

2. It is said that we can not go into a court of equity because we have ample remedy under the probate law, by applying for the removal of the administrator for neglect of

duty, as well as by contesting his administration account. If the existence of these remedies constitutes a reason why a court of equity will not hear us, it will be wholly on the ground that with our power to avail ourselves of them we do not need equitable aid, and not at all on the ground that there is adequate remedy at law and so equity can have no jurisdiction. The adequate legal remedy that excludes equity jurisdiction must always be a remedy against the *same party*. Here a remedy at law against the Security Company would not be adequate remedy against Sisson the respondent. *Middletown Bank* v. *Russ*, 3 Conn., 139; *Chipman* v. *City of Hartford*, 21 id., 499. It would be an adequate legal remedy if we had had the power to use the name of the Security Company in bringing an action at law. But, while it is well settled that a *cestui que trust* may use the name of a bare legal trustee in bringing an action at law, yet it must be a case of a mere naked trust. Perry on Trusts, §§ 346, 520; *Townsend Savings Bank* v. *Todd*, 47 Conn., 190. Here the Security Company had rights in the property and duties to perform with regard to it. It is clear that we could not have used its name without its consent.

3. We admit that we must show some special reason for going into a court of equity. These reasons are the following:—1. The Security Company under its charter gives no bond. Where an administrator gives a bond for the faithful discharge of his duty any person interested may bring suit on the bond for any breach of it; he does not need the concurrence of others. He has by means of the bond a remedy against both the administrator and his sureties. The loss of this takes away his most convenient and available legal remedy.—2. A resort to our appropriate legal remedy by a suit against the Security Company for a devastavit, would involve the necessity of a joinder as plaintiffs of all the parties jointly interested with us. But here a part of those whose equitable rights are the same as ours, are more largely interested in the Nathan Butler estate and really therefore stand in a position of hostility to us. We

can not sue at law without their consent; that consent they
will never give. We are thus utterly debarred from our
only real remedy at law. In equity however we can join
those who favor our claim and bring in all the others as
respondents, as we have in fact done, and thus the court
has before it all parties interested in the matter.

4. We ask for a disclosure; and an account; and an
injunction. These are all matters of equity jurisdiction.
It is said we do not need a disclosure as Mr. Sisson has
made an inventory of the assets of the Nathan Butler estate.
But on the facts admitted by the demurrer the property we
seek is no part of that estate, but belongs to the Jonathan
Butler estate. This being so Mr. Sisson has not only no
duty as administrator with regard to it, but has no right to
inventory it. He has received dividends and income from
the property which by the same admission are property of
the Jonathan Butler estate. Why should he not account
for them? And why should he not disclose under oath as
to their amount, when he received them, and from what par-
ticular stocks or other property? It is said that it is not al-
leged that Mr. Sisson is insolvent and so there is no need of
an injunction. But he may not remain solvent. And of
course his bond does not protect us, for if this property is
no part of Nathan Butler's estate his bondsmen can not
be liable for his misappropriation or conversion of it. We
have here a right of great value and importance, admitted
by the demurrer, which by the refusal of the Security Com-
pany to assert it, we are compelled to lose, unless that
right can be protected by a court of equity and enforced
by its aid. If the law leaves us to such imperfect reme-
dies as we are able to experiment with, it practically
abandons us. Our right is only an equitable one, and
we must have equitable aid or give it up. It is to be
observed that as the stock stood in the name of Nathan
Butler, the legal title passed to Mr. Sisson as his adminis-
trator, so that if, as the demurrer admits, Nathan's right
ceased on his death, Mr. Sisson holds it in trust for the
Jonathan Butler estate. As a trustee he is properly brought

into a court of equity, that a decree may be passed compelling him to transfer the title to the equitable owner.

5. It is not a fatal objection to equity jurisdiction in the case that we are seeking to recover personal property. It is, we admit, a general rule that a court of equity will leave a party to be compensated in damages in an action at law where the property in question is personal. But that rule is not an invariable one. Where a person has contracted to buy stocks, for instance, and the other party refuses to transfer them, a money equivalent is all that can ordinarily be asked. But where a person already owns stocks of which another person has wrongfully obtained the title, a court of equity will compel their restoration. Thus if I by mistake transfer stocks to *A* which I intended to transfer to *B*, a court of equity will compel *B* to transfer them back to me. This is especially true where the personal property to be transferred is a mass of property, constituting the corpus of an estate. Here we claim, and the demurrer admits that we are entitled to, the whole estate left by Nathan Butler. This estate is held as a corpus by Mr. Sisson; and is not held by him as Nathan's estate, for on our theory he left no estate, but really as a trustee for us. It is clear that equity would decree us the estate, supposing there were no other objections to our suit, and not compel us to recover damages of Mr. Sisson, who has no personal and. can have no official interest in keeping possession of the property. 2 Story Eq. Jur., § 24; *Clark* v. *Flint*, 22 Pick., 231, 238; *Mechanics Bank* v. *Seton*, 1 Peters, 299; *Cowles* v. *Whitman*, 21 Conn., 121; *Story* v. *Nor. & Worcester R. R. Co.*, 24 id., 94, 114; *People* v. *Houghtaling*, 7 Cal., 348, 351.

*C. E. Gross*, for the defendant in error.

PARDEE, J. The petitioners seek the aid of a court of equity to compel the transfer to the Security Company, administrator with the will annexed of the estate of Jonathan Butler, of certain insurance stocks which stood in the name of Nathan Butler at his death, in which they claim

that the latter had only a life interest, making them now. the assets of the former estate and held by Sisson, the administrator of the Nathan Butler estate, without authority or only as holder of the bare legal title in trust for the administrator of the Jonathan Butler estate. The respondent, without meeting the question whether the stocks were so held by Nathan Butler, demurs to the bill on the ground that it can not be sustained by the petitioners, but that a suit can be brought only by the Security Company.

The petitioners are a part of the legatees under the will of Jonathan Butler, who will receive under it the stocks in question if they are a part of the assets of his estate, and have therefore an interest in establishing the title of that estate to them and in securing a transfer of them to the Security Company as administrator of that estate.

It is very clear that, if the Jonathan Butler estate is entitled to the stocks, it is not only in the power of the Security Company as administrator to bring a proper action at law for their recovery, but is its duty to do so. This duty the law enforces by sundry remedies of which parties interested in the estate may avail themselves; while it presumes that an administrator will do his duty and gather in all the assets that he is able. He ordinarily has no interest to the contrary. Where he neglects his duty in this or any other particular he makes himself liable on his bond; he may be removed by the court of probate on the application of any person interested; if he finally neglects to account for all the assets of the estate, the aggrieved heir or legatee may object to the allowance of his administration account in that court, and an appeal lies, in case of an adverse decision, to the Superior Court. The law has intended to furnish all parties interested ample security against every neglect or maladministration on the part of executors, administrators and testamentary trustees, in the probate court or by suits on the bonds filed in that court. Why then should the petitioners come into a court of equity for the protection of their interests?

There is no reason that exists in this case that does not

in every other where an executor or administrator refuses to bring a suit which the heirs or legatees think ought to be brought for the recovery of claimed assets, except the single one that the Security Company by its charter is excused from giving a probate bond for the faithful discharge of its duties; the consequence being, as is alleged, that the petitioners have no means of bringing any suit against the company for damages except one at common law for a devastavit, which would require the joining of all the legatees interested as plaintiffs, while a part of the legatees are more largely interested in the estate of Nathan Butler and so will refuse to join.

But we can not regard this reason as sufficient while the other remedies in the probate court are open to them and entirely available. They can apply to that court for the removal of the Security Company from the administration; and they can contest there the settlement of its administration account. It is to be presumed that that court will do them justice, and if it does not they can by appeal bring their case before the Superior Court. It is the policy of the law that all such matters shall be dealt with, so far as possible, in that court or in the Superior Court as an appellate probate court. Besides this, we are by no means prepared to concede that, if the right of the petitioners to a portion of the stocks in question should be lost by the neglect of the Security Company, an action at law for the damage sustained could not be maintained by a portion of the parties interested without joining the rest.

We do not intend to say that the doors of a court of equity are absolutely closed against all parties situated as these petitioners are. They may present a case of an impending irreparable injury. For instance, in a case of misapplication of funds commenced or probably to be made by an insolvent trustee, executor or administrator, with insufficient bond, that court would, on the application of parties interested, arrest his action and take the estate into its custody at once and hold it until his successor should

Butler *v.* Sisson.

be duly qualified. But no such emergency is presented here.

There is no error in the judgment complained of.

In this opinion the other judges concurred.