Michael CATINO, Individually and as Assignee of Shirley Nowlan,

v.

The TRAVELERS INSURANCE COMPANY, INC.

Civ. A. No. 89–281–N.

United States District Court, D. Massachusetts.

May 28, 1991.

Peter J. Black, Meehan, Boyle & Cohen, Boston, Mass., for plaintiff.

Donald B. Gould, Hilary S. Schultz, David L. Veator, Goodwin, Procter & Hoar, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (# 20)

ROBERT B. COLLINGS, United States Magistrate Judge.

### INTRODUCTION

This case presents rather convoluted questions as to the applicability of the attorney-client privilege and the protections of Rule 26(b)(3), Fed.R.Civ.P., in the situation in which an insurance company hires an attorney to defend its insured against claims brought against the insured and

then later is sued for unfair settlement practices in connection with the claims against the insured. In this case, the unfair practices suit is brought by the victorious plaintiff in the suit against the insured who has become the assignee of the insured. A further wrinkle is added by the fact that in addition to executing an assignment, the insured has waived the attorney-client privilege as to communications between her and the attorney who the insurer hired to defend her.

## THE FACTS

On June 30, 1984, plaintiff, Michael Catino ("Catino"), together with Lisa Goguen ("Goguen") and Kim Panaggio ("Panaggio") was a passenger in a vehicle owned and operated by one Shirley Nowlan ("Nowlan") and insured by the defendant, Travelers Insurance Company ("Travelers"). On that date, an accident occurred which resulted in injuries to Catino and other passengers. The Complaint alleges that the accident was Nowlan's fault, and, as a result of the accident, Nowlan was convicted of speeding, driving while intoxicated, and driving so as to endanger. The policy limits on the insurance policy were $10,000/$20,000 coverage for bodily injury and $10,000/$20,000 in underinsured motorist coverage. Thus, a person could obtain no more than $20,000 in damages for an accident and the total coverage for all persons injured in the accident could not exceed $40,000.

Catino suffered a severed ulnar nerve in his left arm and, after surgery, was left with permanent disability as a result of the accident. It is alleged that Catino's attorney, one Arthur ("Arthur"), notified Travelers of Catino's claim in August, 1984. The Travelers settled with Goguen for $20,000 in February, 1985. It is further alleged that the Travelers refused to settle Catino's claim in March, 1985 and thereafter settled Panaggio's claim for $4500. The settlements with Goguen and Panaggio left only $15,500 available to pay Catino's claims.

Thereafter, in September, 1985, Catino sued Nowlan. Under its duty to represent its insured, the Travelers referred the case to attorney Walter Gallagher ("Gallagher") to defend. Attorney Gallagher, after having been assigned the case by Travelers, notified Nowlan of his assignment, that it was possible that the recovery would exceed the policy limits and that she had the right to retain her own attorney. A trial resulted in a verdict for Catino in the amount of $300,000 plus interests and costs. In March, 1988, Nowlan assigned to Catino all of Nowlan's rights, claims and causes of action against Travelers on account of its handling of claims made against her in connection with the June 30, 1984 accident. In addition, on February 27, 1989, Nowlan executed a waiver of "... the attorney-client privilege concerning any and all communications between you and me which concern the Case [*Catino v. Nowlan*]." *See* Exhibit C to Memorandum Of Law, Etc., # 21.

## THE CLAIMS IN THE INSTANT CASE AND THE MOTION TO COMPEL

Count I of Catino's complaint against the Travelers is a claim for payment of the remainder of the policy; Count II is a claim for negligence respecting the investigation, defense and settlement of the claims against Nowlan; Count III contains a claim for breach of the duty of good faith and fair dealing in the investigation, defense and settlement of the claims against Nowlan, and Count IV alleges violations of M.G.L.A. Chapter 93A and 176. Treble damages, interest, costs and attorney's fees are demanded.

After the instant case was filed, the plaintiff sought documents from the Travelers pursuant to Rule 34, Fed.R.Civ.P., and from attorney Gallagher pursuant to a subpoena *duces tecum*. Both the Travelers and attorney Gallagher have refused to produce documents or parts of documents which they claim are protected by the attorney-client privilege or the protections of Rule 26(b)(3), Fed.R.Civ.P. There are forty-one documents withheld which have been designated with numbers from 1 to 41. At the hearing on the motion, Catino's

counsel withdrew the motion as to documents # 22, 23, 27 and 35.

## THE ATTORNEY–CLIENT PRIVILEGE

■ I do not make any rulings respecting the claimed attorney-client privilege because I do not think that the Travelers has demonstrated that the privilege is applicable to communications between it and attorney Gallagher as against Nowlan and her assignee. The plain fact is that attorney Gallagher was Nowlan's attorney, not Travelers. Nowlan has explicitly waived the privilege; the privilege does not belong to the attorney. To the extent that Gallagher had an attorney-client relationship with both Nowlan and Travelers and both Nowlan and Travelers were his clients, "... there can be no privilege on the part of the company [Travelers] to require the lawyer [Gallagher] to withhold information from his other client, the policy-holder [Nowlan]." *Shapiro v. Allstate Insurance Company,* 44 F.R.D. 429, 431 (E.D.Pa., 1968); *Eureka Investment Corp., N.V. v. Chicago Title Insurance Co.,* 743 F.2d 932, 936–37 (D.C.Cir., 1984) citing 8 J. Wigmore, *Evidence,* § 2312 at 605–06. Since Catino, by virtue of the assignment, now possesses all of Nowlan's rights, there is no attorney-client privilege between Gallagher and Travelers as against Catino, at least for the period of time when Gallagher represented both. *Simpson v. Motorists Mutual Insurance Co.,* 494 F.2d 850, 855 (7 Cir., 1974); *Shapiro v. Allstate Insurance Company, supra,* 44 F.R.D. at 431. Unlike the situation in the *Eureka* case, I see no evidence, at least up to the point when Nowlan assigned her rights, that Gallagher ever acted in a manner that was not in the interest of both Nowlan and Travelers. There was never a dispute between Nowlan and Travelers with respect to coverage. *Cf. Independent Petroleum Corp. v. Aetna Casualty & Surety Co.,* 654 F.Supp. 1334, 1365–66 (D.D.C., 1986).

For these reasons, I am of the view that it is more helpful to analyze the issues in terms of the so-called "work-product rule" as codified in Rule 26(b)(3), Fed.R.Civ.P. rather than in terms of the attorney-client privilege. *See LaRocca v. State Farm Mutual Automobile Insurance Co.,* 47 F.R.D. 278, 280–82 (W.D.Pa., 1969).

## THE WORK–PRODUCT DOCTRINE— RULE 26(b)(3), FED.R.CIV.P.

In beginning an analysis of the thirty-seven documents which remain in dispute, I find that the documents break down into different categories. The first breakdown would be by time of generation and divides into three groups: (1) documents prepared before the date of the demand letter of July 29, 1988; (2) documents prepared between the date of the demand letter and the date the instant case was filed on December 15, 1988; and (3) documents prepared after that date. The second breakdown would be by persons who or entities which generated the documents. The breakdown of this universe of documents is also into three groups, i.e., (1) communications from Travelers to Mr. Gallagher; (2) communications from Mr. Gallagher to Travelers; and (3) communications between various persons within the Travelers.

Rule 26(b)(3), Fed.R.Civ.P., provides, in pertinent part:

[A] party may obtain discovery of documents and things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable, without undue hardship to obtain the substantial equivalent of the materials by other means.

■ After an *in camera* review, it is clear that many of the documents are protected by Rule 26(b)(3), Fed.R.Civ.P. There can be no question that documents prepared in anticipation of the instant litigation, i.e., the case by Catino against Travelers, as opposed to the *Catino v. Nowlan* litigation, would be protected provided that the protections have not been waived. As stated, the complaint in the instant case

was filed on December 15, 1988. Accordingly, documents prepared by the Travelers after that date in response to the claims contained in the complaint and held completely within the Travelers are protected. I find that documents # # 24, 25, 26, 30, 31, 36, 37 and 41 fall within this category.

■ As indicated, the demand letter which preceded the instant case was filed on July 29, 1988. Documents prepared as a result of that letter in anticipation of the claims contained therein are protected by Rule 26(b)(3), Fed.R.Civ.P., if the documents were held completely within the Travelers. I find that documents # # 20 (the demand letter with handwritten notations), 21 (the response letter with handwritten notations), and 39 fall into this category.

■ Of the remaining twenty-six documents, twenty-one (all but # # 5, 8, 9, 11, 12) involve communications either from Gallagher to the Travelers or from the Travelers to Gallagher. It is clear that all of these documents were prepared in anticipation of the litigation denoted *Catino v. Nowlan* and that the materials were prepared for "another party" to that litigation [Nowlan] and by and for "that other party's representative (including the other party's ... insurer [Travellers])". Rule 26(b)(3), Fed.R.Civ.P.

Further, I find that at the time Gallagher was assigned the case by Travelers in October, 1985, Travelers knew that if Catino won the *Catino v. Nowlan* suit, an unfair practices claim against it by Catino was a real probability. In other words, after October, 1985, the Travelers anticipated litigation between it and Catino if Catino won the *Catino v. Nowlan* suit.

As might be expected, I find that many of the twenty-one documents comprising communications between Gallagher and Travelers and *vice versa* were prepared in anticipation of *both* the case of *Catino v. Nowlan* and claims by Catino against the Travelers. Such documents would be protected by Rule 26(b)(3), Fed.R.Civ.P., regardless of whether Gallagher technically could be said to be the attorney for Travelers. As to the unfair practices claim

against Travelers at issue in the instant case, attorney Gallagher would fall within one of the other categories of a party's [Travelers'] "representative" listed parenthetically in Rule 26(b)(3), Fed.R.Civ.P., i.e., "consultant, ... agent."

I find that on this theory, documents # # 3, 4, 6, 7, 10, 13, 14 (Arthur's letter to Gallagher dated December 23, 1987 with handwritten notations), 15 (first page of Arthur's letter to Gallagher dated January 12, 1988 with handwritten notations), 16, 19, 28, (both pages of Arthur's letter to Gallagher dated January 12, 1988 with handwritten notations), 29, 32, 33, 34, 38, and 40 were prepared in anticipation of both the litigation in *Catino v. Nowlan* and the claims made by Catino against Travelers in the instant case. Thus, they are protected by Rule 26(b)(3), Fed.R.Civ.P.

Further, I also find that documents # # 8 and 9 are protected on the same theory; they comprise written notations by personnel at Travelers of oral communications to Travelers from Gallagher and were prepared in anticipation of both the litigation in *Catino v. Nowlan* and the claims made by Catino against Travelers in the instant case.

I cannot find, based on my *in camera* review, that any of the remaining documents, i.e., # # 1, 2, 5, 11, 12, 17 and 18, were prepared in anticipation of Catino's claim against Travelers. Rather, they were all prepared exclusively in anticipation of the litigation in *Catino v. Nowlan*.

Thus, the issue is clearly drawn as to these documents—is an insurance company able to claim the protections of Rule 26(b)(3), Fed.R.Civ.P. as to materials prepared by an attorney hired by the insurance company to represent one of its insureds in the circumstance when the materials were prepared solely for the purpose of defending the claims against the insured in litigation to which the insurance company is not a party?

The answer, in my view, is that the insurance company has no standing to claim the protection in these circumstances. Quite simply, for purposes of these documents,

Gallagher was not acting for Travelers, Travelers was not his client, and he was not Travelers' representative, either as an agent or as a consultant.

## STANDING

■ Unlike the attorney-client privilege, which belongs only to the client, the protections of Rule 26(b)(3), Fed.R.Civ.P., may be claimed by either the client or the attorney. *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 86 F.R.D. 160, 165 (E.D.Wis., 1980); *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3 Cir., 1979); *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7 Cir., 1980); *Moody v. Internal Revenue Service*, 654 F.2d 795, 801 (D.C.Cir., 1981); *In re Sealed Case*, 676 F.2d 793, 809 fn. 56 (D.C.Cir., 1982). The fact that the client waives the privilege does not mean that protection is lost; the attorney may contest disclosure even in the face of a client's waiver. *In re Grand Jury Proceedings, supra,* 604 F.2d at 801.

The reason for this rule is that the attorney-client privilege and the work-product doctrine have somewhat different purposes. As was explained in the case of *In re Special September 1978 Grand Jury, supra,* 640 F.2d at 62, "[t]he purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys" so that any legal advice given is based on full disclosure of relevant facts. Confidentiality is key to effectuating that purpose. *Id.* citing *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

> The work product doctrine, on the other hand, functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny.

*In Re Special September 1978 Grand Jury, supra,* 640 F.2d at 62.

■ However, it seems to me that a necessary corollary of this proposition is that when the attorney's client waives the protections, the attorney's standing should be limited to what has been described as "opinion work-product", i.e., "... mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), Fed.R.Civ.P. In other words, an attorney may invoke the protections of Rule 26(b)(3), Fed.R.Civ.P., both on his own behalf and on behalf of his client, but if the client waives the protection, the attorney's standing should be limited to objecting only to disclosure of those types of items which would destroy the inviolate nature of the attorney's thought processes as to all aspects of the case (i.e., merits, weaknesses, credibility of witnesses, weight and effect of evidence, legal theories, trial strategy, etc.).

■ Although there is a dispute in this case as to whether attorney Gallagher invoked the work-product protections as to any of the documents, I need not resolve the point except for one document, # 18. As to the others, i.e., # # 1, 2, 5, 11, 12, and 17, I find that although they were plainly created in anticipation of litigation, they do not contain any of the "opinion work-product" of attorney Gallagher. They shall be produced.

I find that the last six-word sentence on document # 18 does contain "opinion work-product" of attorney Gallagher. I shall direct that counsel for the defendant send a copy of the within Memorandum and Order to attorney Gallagher. If attorney Gallagher, within ten working days of the date of this Order, files an objection to producing document # 18 on the grounds of "opinion work-product," that document will be produced with that sentence excised. If no objection is filed, the entire document shall be produced.

## SUBSTANTIAL NEED AND UNDUE HARDSHIP

Leaving aside # 18, I have found that thirty of the documents at issue were prepared, at least in part, in anticipation of litigation of the instant case by Travelers' "representative" and that Travelers has standing to assert the protections of Rule 26(b)(3), Fed.R.Civ.P., as to those documents. Catino first contends that even if

documents are prepared in anticipation of litigation, he may obtain discovery of them because they are "relevant" and "necessary" to his claim of unfair settlement practices. Second, he argues that even if the documents were prepared in anticipation of litigation, he may obtain discovery of them if he is able to show that he "... has substantial need of the materials in the preparation of [his] case and [he] is unable without undue hardship to obtain the substantial equivalent of the materials ...". Rule 26(b)(3), Fed.R.Civ.P.

The first contention lacks merit. If the documents were prepared in anticipation of litigation, Catino may obtain them only by meeting the "substantial need" and inability "without undue hardship to obtain the substantial equivalent" tests set forth in Rule 26(b)(3), Fed.R.Civ.P. *Layton v. Liberty Mutual Insurance Co.,* 98 F.R.D. 457 (E.D.Pa., 1983). The other cases which Catino cites are distinguishable or wrongly decided.

For example, Catino points to the case of *Shapiro v. Allstate Insurance Co., supra,* 44 F.R.D. 429. That case involved the attorney-client privilege and did not discuss the work-product doctrine at all. Furthermore, the case was decided under a pre–1970 version of Rule 34 which required a showing of "good cause" before a party was entitled to discovery of documents. The standard for obtaining work-product materials is considerably higher.

The case of *Central National Insurance Company of Omaha v. Medical Protective Company of Fort Wayne, Indiana,* 107 F.R.D. 393, 395 (E.D.Mo., 1985), although decided after 1985, does not mention Rule 26(b)(3), Fed.R.Civ.P., and erroneously applies the old "good cause" standard. The Court in *Western National Bank v. Employers Insurance of Wasau,* 109 F.R.D. 55 (D.Colo., 1985) was not explicit as to the standard it was applying but it can be implied that the alternative holding ("the investigative file is essential to the plaintiff for another reason") was based on a finding of substantial need and the inability to obtain the substantial equivalent.

In the instant case, I do not find a substantial need. The plain fact is that the bulk of the unfair settlement practices complained of in this case occurred *before* Catino instituted suit against Nowlan when Travelers settled the other claims leaving only $15,500 to settle Catino's claims. None of the documents bear on this issue. The only unfair practices alleged after suit was commenced deal with what notification was or was not given to Nowlan. There is no showing that the "substantial equivalent" of this information cannot be obtained by deposing Nowlan.

Further, after an *in camera* inspection, I find that the content of the documents themselves are not such that Catino has substantial need of them.

## CONCLUSION

It is ORDERED that Plaintiff's Motion To Compel Production Of Documents (# 20) be ALLOWED as to documents # # 1, 2, 5, 11, 12, and 17, DENIED as to documents # # 3, 4, 6, 7, 8, 9, 10, 13, 14, 15, 16, 19, 20, 21, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40 and 41 Document # 18 shall be produced in its entirety if, within ten (10) working days, attorney Gallagher does not file an objection to disclosure of the last sentence (six words) of the document; if attorney Gallagher files an objection, # 18 shall be produced with the last sentence excised.

To the extent that the within motion has been allowed, the defendant is ORDERED, pursuant to Rule 37(a)(2), Fed.R.Civ.P., to produce the documents to counsel for the plaintiff *on or before the close of business on Friday, June 14, 1991.*